**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| WENDI A. PEACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-601-AZ |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Wendi Peace's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] Peace argues that the Administrative Law Judge ("ALJ") committed error by failing to obtain a medical expert's interpretation of an MRI and by concluding Listing 5.08 was not equaled without a medical expert's opinion. For the reasons discussed, the Court disagrees with Peace's arguments and finds no reversible error by the ALJ. Accordingly, the Court will affirm the ALJ's written decision.

[1] On September 16, 2025, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 9.

## Background

Plaintiff Wendi Peace filed an application for disability insurance benefits on March 8, 2023. A.R. 10.[2] She was 49 years old when she applied for disability. *Id.* at 18. She has limited education and no past relevant work experience in the relevant period. *Id.* at 17.

Peace claimed a disability onset date of April 1, 2019. *Id.* at 10. Her claims were denied in her initial application and upon reconsideration, and Peace requested a hearing before an ALJ. *Id.* On June 5, 2024, the ALJ held a hearing at which Peace was represented by an attorney and a Vocational Expert ("VE") testified. *Id.* On June 30, 2024, the ALJ issued a written decision denying benefits. *Id.* at 10-19. Plaintiff timely appealed to the Appeals Counsel, and the Appeals Counsel denied Plaintiff's Request for Review. *Id.* at 1. Plaintiff filed a complaint for District Court review. *See* DE 1. Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Peace was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. A.R. 13. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease L5-S1; lumbar sciatica; radiculopathy; and benign positional vertigo/vertigo. *Id.*

[2] Citations to the Administrative Record, filed at DE 6, are throughout as "A.R."

The ALJ next considered whether Plaintiff's documented severe impairments met or equaled any of the applicable listings. The ALJ determined Plaintiff did not meet Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 2.07 (disturbance of labyrinthine-vestibular function) or 5.08 (weight loss due to any digestive disorder). *Id.* at 13-14. The ALJ likewise found that Plaintiff's impairments or the combination of impairments did not meet or equal any applicable listing because she did not have a documented medical need that satisfied all of requirements of any of these listings. *Id.*

Having found Plaintiff was not presumptively disabled based on any applicable listing, the ALJ moved on to assess her Residual Functional Capacity (RFC). The ALJ found she had the capacity:

> To perform light work as defined in 20 CFR 404.1567(b) except that the claimant could occasionally climb ramps and stairs, she could never climb ladders, ropes, scaffolds, and she could occasionally balance, stoop, kneel, crouch and crawl. The claimant could frequently operate foot controls with the bilateral lower extremities. The claimant should have avoided all operation of commercial or personal vehicles, and she should have avoided all exposure to unprotected heights, open flames, large bodies of water, unguarded moving machinery, and sharp blades or brakes.

*Id.* at 14.

The ALJ then recounted the testimony and evidence from Plaintiff's medical history that supported or factored into the RFC. First, she addressed Plaintiff's testimony. The ALJ noted Plaintiff's testimony that she experiences approximately 5

episodes of vertigo per week due to migraines, she has been advised not to lift more than 5 pounds, she cannot stand for more than 30 minutes, and she engages in limited activities. *Id.* at 15. The ALJ then addressed medical evidence in the record, including treatment records and imaging generally indicating a lack of degenerative changes that would cause functional deficits. *Id.* at 15-16.

The ALJ further reviewed the opinions of the state agency medical consultants, who concluded that there was insufficient evidence in the file to establish existence of a severe physical impairment prior to the expiration of claimant's date last insured. *See id.* at 17. The ALJ did not find their testimony persuasive because she found that there *was* evidence of claimant's degenerative disc disease and vertigo, contrary to the consultant's conclusions. *Id.* The ALJ added exertional limitations to account for these impairments. *Id.* at 14.

State agency psychologists also evaluated the claimant's impairments and found that there was insufficient evidence in the record to establish mental impairment prior to the claimant's date of last insured. *Id.* at 17. The ALJ found this persuasive and agreed on the lack of evidence supporting any impairment or additional limitations. *Id.*

As to Plaintiff's testimony at the hearing regarding her limitations, the ALJ noted that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 15. She explains that there is "very little relevant medical evidence in the record assessing the claimant's medical conditions prior to . .

. claimant's date last insured" and "no evidence of claimant complaining of, or seeking treatment for, vertigo" during that time. *Id.* The ALJ also points to the discrepancy between Plaintiff's claims of vertigo frequency in her medical records versus her testimony. *Id.* at 16 ("Contrary to her testimony where she claimed to have experienced five episodes of vertigo per week during the period at issue, in December 2022, she informed Dr. Kratzer that she experienced only four episodes of vertigo in the previous six months . . . .").

At step four, Plaintiff had no past relevant work. *Id.* at 17. The Vocational Expert (VE) testified that someone with Plaintiff's RFC would be able to perform representative occupations, such as housekeeping cleaner, cashier, and sales attendant. *Id.* at 18. Accordingly, at step five, Plaintiff was found not to be disabled and the application for benefits was denied. *Id.* at 19.

**Discussion**

The Social Security Act authorizes judicial review of a final decision of the agency and states that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970

F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

An ALJ must articulate their analysis of the evidence in such a way to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). Thus "[a]n ALJ need not specifically address every piece of evidence." *O'Connor-Spinner*, 627 F.3d at 618. Remand is appropriate only "when it is unclear if the ALJ examined the full range of medical evidence, or if the

court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up).

On appeal, Plaintiff raises two arguments. First, she argues that the ALJ committed reversible error by failing to obtain a medical expert's interpretation of an MRI. Second, she argues that the ALJ committed reversible error by concluding that Listing 5.08 was not met without a medical expert's opinion. The Court will address each argument in turn.

### A. Whether the ALJ Needed to Obtain a Medical Expert's Interpretation

Plaintiff first argues that the ALJ committed reversible error by failing to obtain a medical expert's interpretation of a January 2023 MRI. DE 18 at 8. In support, Plaintiff cites *Kemplen v. Saul*, 844 Fed. Appx. 883, 888 (7th Cir. 2021), stating that "[r]emand is required if 'the new information "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the subsequent] report"'" DE 18 at 8. Although this is a correct statement of law, the facts in this case heavily limit its application. Here, unlike in *Kemplen*, the imaging does *not* postdate the state agency consultant's report. State Agency Doctor J.V. Corocan completed his medical evaluation on August 23, 2023, and Doctor Shayne Small completed her evaluation on January 11, 2024. A.R. 80, 87. The MRI was in the record at the time of these evaluations, and even after considering it, both physicians found insufficient evidence of disability. *Id.* Therefore, because the imaging does not postdate the state

agency consultant report, there was no need to obtain a third opinion interpreting it, and there was no reversable error.

And although the ALJ ultimately found the state agency physician's opinions not persuasive, she did not engage in any impermissible analysis of the MRI herself or "play doctor." *Cf. McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (remanding where the ALJ "independently and impermissibly" compared the MRI results with earlier medical records to determine the progression of impairments). Here, the ALJ repeated and adopted the analysis of the treating physician who prepared the MRI report. A.R. 16 ("Subsequent magnetic resonance imaging (MRI) of the claimant' s lumbar spine in January 2023 revealed mild-to-moderate neural foraminal stenosis bilaterally at L5-S1 with impression on the existing L5 nerve roots and broad-based central disc extrusion at L5-S1 with impingement of the traversing S1 nerve root"). "[T]here is not an evidentiary deficit simply because an ALJ rejects the opinions of the agency reviewing and consulting physicians. Rather, the question is whether the rest of the record supports the ALJ's RFC assessment." *Laughton v. O'Malley,* No. 1:23-cv-35-HAB, 2024 WL 748752, at *5 (N.D. Ind. Feb. 22, 2024). The ALJ's assessment of Peace's RFC is well-articulated and supported by substantial evidence. The ALJ's analysis of the MRI results, which tracked that of the state agency consultants, is thus not ground for remand.

At most, Plaintiff argues that an additional doctor "could review" the MRI "and say that they limit Wendi to light work, but a doctor may also say that they support a limitation to sedentary work or even less than sedentary work." DE 18 at 10. That

is pure speculation, however, and insufficient to warrant remand especially in light of the fact the MRI in question *pre-dates* the state agency medical consultants' opinions. *Summers v. Berryhill,* 864 F.3d 523, 527 (7th Cir. 2017). "It is not enough to criticize the ALJ's decision about her functional capacity to work." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Instead, a claimant "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Id.*

**B. Whether the ALJ Could Conclude Listing 5.08 Was Not Met Without a Medical Expert's Opinion**

Plaintiff also argues that the ALJ committed reversible error by concluding Listing 5.08 was not met without an expert's opinion. DE 18 at 10. Again, Listing 5.08 concerns weight loss due to a digestive disorder. Plaintiff relies on a portion of the Social Security Hearings, Appeals, and Litigation Law Manual which states that an ALJ "will consider opinions about medical evidence from a physician or psychologist designated by the Commissioner whenever a claimant is not engaging in substantial gainful activity and has a severe impairment(s) that does not 'meet' that requirements of a listing" and an ALJ "must obtain [medical expert] testimony specific to the issue of medical equivalence if the ALJ intends to find that the claimant equals the requirements of a listing." *Id.* at 12 (quoting Social Security Administration, *Hearings, Appeals and Litigation Law Manual* HA 01260.070(D)).

Plaintiff characterizes this as a "requirement to seek medical expert review" but this is a misstatement of the law. *Id.* SSR 17-2p does not require that an ALJ obtain medical expert testimony for medical equivalence. In contrast, SSR 17-2p

provides that an ALJ is not required to ask for and consider evidence from medical experts when the ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medially equals a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). "The issue of equivalence is for the ALJ to decide. . . . And while the regulations allow an ALJ to solicit a medical opinion on that issue, they do not require it." *Mason v. Kijakazi*, No. 4:20-CV-42-JVB-JPK, 2021 WL 3728965, at *7 (N.D. Ind. July 16, 2021), *report and recommendation adopted*, No. 4:20-CV-42-JVB-JPK, 2021 WL 3726887 (N.D. Ind. Aug. 23, 2021).

Furthermore, the regulations do "not require ALJs to name and discuss every Listing in their written decisions." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022). Here, the ALJ articulated why she believes the evidence does not support equivalence. A.R. 14 ("the objective medical evidence does not indicate that the claimant has a medically determinable digestive impairment that required treatment, nor has she cited any evidence that her low body weight and BMI were caused by constipation, nausea, or any other symptom associated with a digestive disorder"). "[N]either the SSA's regulations nor the Social Security Act impose an affirmative obligation on ALJs to scour the Listings for a possible match, no matter how unlikely." *Wilder*, 22 F.4th at 652. If a claimant fails to offer evidence that they meet or equal a listing (as Plaintiff fails to here), the ALJ "has no duty to analyze" that listing. *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011). Because there is

no requirement for the ALJ to obtain a medical expert opinion under these circumstances, Plaintiff has not demonstrated any reversable error here either.

**Conclusion**

For the reasons discussed, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is **DIRECTED** to enter judgment for the Defendant Commissioner of Social Security and **CLOSE** this case.

SO ORDERED this 23rd day of September 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT